IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACIFIC CENTURY INTERNATIONAL, LTD., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 12 C 1057 |
| JOHN DOES 1-37, | ) ) ) ) | |
| Defendants. | ) ) | |
| PACIFIC CENTURY INTERNATIONAL, LTD., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 12 C 1080 |
| JOHN DOE, | ) ) ) | |
| Defendant. | ) ) | |
| FIRST TIME VIDEOS LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 12 C 1083 |
| JOHN DOE, | ) ) ) | |
| Defendant. | ) ) | |
| FIRST TIME VIDEOS LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 12 C 1085 |
| | ) | |

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |
| ─────────────────────────────────────── | ) | |
| | | |
| HARD DRIVE PRODUCTIONS, INC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1086 |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |
| ─────────────────────────────────────── | ) | |
| | | |
| PACIFIC CENTURY INTERNATIONAL, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1088 |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |
| ─────────────────────────────────────── | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

JAMES F. HOLDERMAN, Chief Judge:

These six cases were consolidated for the purpose of this court ruling on a motion to compel information about anonymous internet users identified only by their IP addresses that the plaintiffs subpoenaed from two internet service providers, Comcast Cable Communications, LLC ("Comcast") and Cequel III Communications II, LLC, d/b/a Cebridge Communications and Suddenlink Communications ("Suddenlink") (collectively "the ISPs"). (Dkt. No. 9.) On March 30, 2012, the court granted in part and denied in part the plaintiffs' motion to compel. (Dkt. No. 22.)

Pending before the court is the plaintiffs' motion to alter or amend the judgment under Fed.

R. Civ. P. 59(e). (Dkt. No. 25.) For the reasons explained below, that motion is denied.

BACKGROUND

The plaintiffs in each of the six cases are producers of pornographic videos.[1] In each case, the plaintiffs allege that the John Doe defendants illegally reproduced and distributed a pornographic video in violation of the plaintiffs' copyright.[2] The defendants accessed the videos in each case from their computers through the use of a BitTorrent file sharing protocol. One other district court has previously explained that a BitTorrent file sharing protocol is a decentralized method of distributing data on peer-to-peer ("P2P") file sharing networks:

> Since its release approximately 10 years ago, BitTorrent has allowed users to share files anonymously with other users. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data amo[ng] themselves by exchanging pieces of the file with each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another. In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."
>
> The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker,

---

[1] The facts are drawn from the operative complaint in the four cases underlying the six subpoenas. *See* Amended Complaint [Dkt. No. 6], *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal. Jan. 5, 2012); Amended Complaint [Dkt. No. 6], *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal. Jan. 5, 2012); Second Amended Complaint [Dkt. No. 23], *First Time Videos, LLC v. William Meyer, Jr.*, No. 11 C 690 (E.D. Va. Jan. 4, 2012); Complaint [Dkt. No. 1], *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex. Dec. 16, 2011).

[2] In *Pacific Century International Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex.) and *Pacific Century International, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal.), the video at issue is entitled "Amateur Creampies - Laney Boggs." In *Hard Drive Productions, Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal.), the video is entitled "Amateur Allure - Dylan." In *First Time Videos, LLC v. William Meyer, Jr.*, No. 11 C 690 (E.D. Va.), the video is entitled "FTV - Tiffany."

the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects [from] the swarm or the BitTorrent client otherwise does the same.[3]

Because the BitTorrent system allows each individual user to share information anonymously, the plaintiffs filed their suits without knowing the identity of the defendants. Instead, the plaintiffs identified only a series of Internet Protocol ("IP") addresses assigned to computers that accessed the copyrighted material, along with the date and time of each computer user's alleged unlawful activity. In each case, the plaintiffs filed a motion for early discovery seeking leave to subpoena the ISPs to obtain the identifying information for each IP address. The respective courts in each case granted plaintiffs leave to subpoena the ISPs, (Dkt. No. 12, Ex. B), and the plaintiffs issued Federal Rule of Civil Procedure 45 subpoenas to each ISP calling for production at the office of the plaintiffs' law firm in Chicago. (Dkt. No. 12, Ex. A.) Accordingly, the subpoenas were issued from this court, and the plaintiffs moved to compel production from the ISPs.

The court granted the motion to compel with respect to Case 12 C 1057. The court denied the motion to compel and quashed the subpoenas in the other five cases because those subpoenas sought information about IP addresses connected to individuals who were not parties in the underlying cases. (Dkt. No. 23, at 11.) The court held that producing any information about non-parties placed an undue burden on the ISPs, because information about non-parties was irrelevant

---

[3] *MCGIP, LLC v. Does 1–30*, No. 11 C 3680, 2011 WL 3501720, at *1 (N.D. Cal. Aug. 10, 2011) (alteration in original) (quoting *Diabolic Video Prods., Inc. v. Does 1–2099*, No. 10 C 5865, 2011 WL 3100404, at *1 (N.D. Cal. May 31, 2011)).

to the plaintiffs' civil conspiracy and copyright claims. (*Id*. at 8-11.) Consequently, it was "plain that the plaintiffs are not seeking information about the non-party IP addresses for the purpose of litigating their current claims." (*Id.* at 10.)

## LEGAL STANDARD

"[A] Rule 59(e) motion will be granted only in the case of a manifest error of law or fact, or newly discovered evidence." *Abcarian v. McDonald*, 617 F.3d 931, 943 (7th Cir. 2010). A manifest error of law is demonstrated by a court's "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000).

## ANALYSIS

The plaintiffs ask the court to alter or amend the judgment in three respects. The court will address each in turn.

I.  Discovery of Identity of Doe Defendants

First, the plaintiffs point out that in two of the underlying cases, the defendant John Doe is a subscriber of Comcast with an IP address among those subpoenaed by the plaintiffs. They therefore ask that the judgment be altered to order the ISPs to turn over information about those two IP addresses.

The plaintiffs are correct that the identities connected with the IP addresses of two defendants were subpoenaed from Comcast. *See* Amended Complaint [Dkt. No. 6, Ex. A], *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal. Jan. 5, 2012) (IP address 76.114.33.61); Amended Complaint [Dkt. No. 6, Ex. A], *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal. Jan. 5, 2012) (IP address 67.172.174.86). They are also correct that information connected to

those two addresses is discoverable under the rules articulated in the court's order of March 30. (Dkt. No. 23.) Nonetheless, the court correctly quashed the subpoenas seeking information about those two addresses because those subpoenas also requested information about non-party IP addresses. (*Id.* at 11.) If the plaintiffs issue additional subpoenas seeking information from only party IP addresses, they can be enforced under the court's order (assuming they are otherwise enforceable under law).

II.     The Propriety of Addressing the Issue of Relevance

Second, the plaintiffs contend that the court improperly raised the issue of the relevance of the requested discovery *sua sponte*, and that the ISPs waived any relevance objection by not mentioning it in their brief on the motion to compel. (Dkt. No. 13.) The issue of relevance was, however, properly presented to the court. The ISPs' response to the motion to compel plainly contended that the requested discovery imposed an undue burden on them. (*See, e.g.*, *id.* at 4 ("Given the apparent and expected abuse of the discovery process, these procedural anomalies, and inherent substantive defects in the Underlying Actions . . . Comcast and Suddenlink [would] be unduly burdened by having to comply with the Subpoenas . . . ."); *id.* at 5 ("When a motion to compel compliance with a subpoena is filed against a non-party, Fed. R. Civ. P. 45 requires a court to quash or modify a subpoena if that subpoena subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv)."); *id.* at 11 ("Comcast and Suddenlink . . . are seeking to avoid the undue burden of complying with Subpoenas that were issued without regard to proper procedure."); *id.* at 15 ("Given this defect, Comcast and Suddenlink would be unduly burdened by having to comply with the Subpoenas.").)

Any inquiry into whether a burden is undue requires a court to assess the benefit of the

information to the requesting party, and thus the relevance of the subpoenaed information to the underlying case. *Cf. Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 559 (7th Cir. 1984) ("When protection from a deposition subpoena is sought, the court must apply a balancing test to determine whether the need of the party seeking disclosure outweighs the adverse effect such disclosure would have on the policies underlying the [claimed] privilege." (alteration in original) (quotation marks and citation omitted)). The ISPs noted that rule in their briefing. (Dkt. No. 13, at 5 ("To determine the existence of undue burden, this Court compares the burden of compliance with the benefit of production of the material sought." (citing *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004))).) They then argued that the burden on them was undue because the information was not relevant to the underlying actions. (Dkt No. 13, at 6 ("Comcast and Suddenlink should not be subject to the burden—undue or otherwise—of providing the requested information that ultimately will not even be useful in the Underlying Actions.").)

To be sure, the ISPs did not focus on the irrelevance of the requested information as much as on their other arguments regarding improper joinder and the lack of personal jurisdiction. Nonetheless, they did raise the issue in their brief, and the plaintiffs had ample opportunity to present their position on the issue in their reply brief. (Dkt. No. 16.) Thus, the court committed no manifest error of law or fact when it properly addressed the relevance of the requested information in its ruling.

The plaintiffs also contend that the court should not have ruled on relevance because the courts in the underlying actions have already ruled that discovery of information related to the non-party IP addresses was appropriate in each case. (Dkt. No. 25, at 5.) The ISPs, however, were not a party to the proceedings in the underlying actions and had no chance to object. Moreover, the

courts in those cases were addressing only the question of whether the requested information was relevant at all. That question is fundamentally different from the question facing this court—whether the requested information was *relevant enough* to justify on balance a decision to impose the burden of information production on the subpoenaed non-party ISPs. Accordingly, there is no conflict between this court's ruling and the decisions of the courts in the underlying actions.

III.    The Plaintiffs' Contributory Infringement Claim

Third, the plaintiffs contend that the court's order failed to consider the relevance of the requested discovery to the plaintiffs' claims of contributory infringement. Specifically, the plaintiffs argue that to show that the Doe defendants committed contributory infringement, the plaintiffs must first show that the individuals connected to the non-party IP addresses directly infringed the plaintiffs' copyrights. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990). Discovery of the identity connected to the non-party IP addresses, the plaintiffs argue, is necessary to make that showing, and thus relevant to the plaintiffs' claim against the Doe defendants.

In response, the ISPs contend that, at this point in the litigation, the only information the plaintiffs have alleged about the Doe defendants' infringing activity is a single date and time during which the IP addresses associated with the defendants were engaged in allegedly infringing activity. (Dkt. No. 29, at 8.) It is possible that each Doe defendant was present in the BitTorrent swarm, making copyrighted material available for others to download, for a period considerably longer than that single moment. (*See* Dkt. No. 30, at 6.) Nonetheless, at this stage, during early discovery, there are no allegations indicating how long the Doe defendants were present in the swarm.

Until the plaintiffs have that information (which will be available after the identity of the Doe

-8-

defendants is ascertained and the parties proceed with regularly scheduled discovery), any early discovery about non-party IP addresses imposes an undue burden on the subpoenaed ISPs. Without any knowledge about the defendants' participation in the swarm, the plaintiffs now are merely speculating that the hundreds of IP addresses about which they seek information participated in the same swarm as the defendant. After learning the period during which the respective Doe defendants were engaged in the swarm, by contrast, the plaintiffs can seek information about only IP addresses who were present in the same swarm and whose infringement the Doe defendants may actually have contributed to, likely a much smaller number. Accordingly, waiting until a later stage to allow this discovery will diminish the burden on the ISPs.

In addition, because the plaintiffs are able to learn the identity connected to the IP addresses listed as defendants, they do not need the information about the non-parties to proceed. *See First Time Videos, LLC v. Doe*, No. CIV S-12-621, 2012 WL 1355725, at *4 (E.D.Cal. Apr. 18, 2012) ("Therefore, because plaintiff does not need expedited discovery regarding the alleged co-conspirators in order to proceed with this case, that "need" does not outweigh the prejudice to the ISPs, which would necessarily incur some burden (albeit minimal) in responding to the subpoenas."). The plaintiffs' need for the discovery is therefore diminished.[4]

Finally, despite the plaintiffs' assurances, the court is still not convinced that the plaintiffs are seeking discovery about the non-parties for use in the underlying litigation against the Doe

---

[4] The plaintiffs contend that their need at this stage is nonetheless urgent, because the ISPs may destroy the IP address information in the regular course of business. That concern is minimal, however, because the ISPs have a duty to preserve "relevant evidence over which [they] had control and reasonably knew or could reasonably foresee was material to a potential legal action." *China Ocean Shipping (Group) Co. v. Simone Metals Inc.*, No. 97 C 2694, 1999 WL 966443, at *3 (N.D. Ill. Sept. 30, 1999) (collecting cases).

defendants. As the court explained in its March 30 order, it appears that the plaintiffs' goal is instead "to either sue the individuals whose identity they uncover or, more likely, to negotiate a settlement with those individuals." (Dkt. No. 23, at 10.) Denying early discovery of the non-party IP addresses will ensure that the plaintiffs intend to continue with their claims against the named defendants before imposing the burden on the ISPs of producing the identifying information of non-parties.

## CONCLUSION

For the reasons explained above, the plaintiffs' motion to alter or amend the judgment (Dkt. No. 25) is denied.

ENTER:

_____
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: May 21, 2012