**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Millennium TGA, Inc.,** | |
| **Petitioner,** | |
| **v.** | **Misc. Action No. 12-mc-00150 (RLW)** |
| **Comcast Cable Communications LLC,** | Underlying civil action pending in the U.S. District Court for the Southern District of Texas, No. 4:11-cv-4501 |
| **Respondent.** | |

**MEMORANDUM OPINION**

Before the Court is an appeal by Comcast Cable Communications LLC ("Comcast"). Comcast appeals an Order by Magistrate Judge Alan Kay granting in part and denying in part a Motion to Compel filed by Millennium TGA, Inc. ("Millennium"). For the reasons set forth below, the Court vacates the Order by Magistrate Judge Kay and denies the Motion to Compel. However, the Court exercises its discretion to allow enforcement of the subpoena in a modified form.

## I.   Procedural History

This matter is before this Court after a rather circuitous journey. Without belaboring all of the details, the relevant highlights of the odyssey are summarized below.

Millennium initially filed a complaint in this judicial district on December 7, 2011, alleging one count of copyright infringement against 939 John Doe defendants. *Millennium TGA v. Does 1–939*, No. 1:11-cv-02176 (hereinafter "*Millennium TGA I*"). The complaint alleged that the Doe defendants used the BitTorrent protocol to illegally download Millennium's copyrighted work, "Shemale Yum – Jenna Comes a 'Knocking!" Plaintiff alleged that the actual names of the Doe defendants were unknown to the

Plaintiff, and that each of the Doe Defendants was known only by his or her Internet Protocol address ("IP address"), which was discovered by observing the IP addresses of the computers that entered the "BitTorrent swarm" used to download Plaintiff's copyrighted movie without authorization.  The case was randomly assigned to the undersigned after its filing.

On December 16, 2012, merely nine days later, Millennium voluntarily dismissed the action without explanation.  As Comcast opines, a very likely explanation for Millennium's dismissal – especially in light of Millennium's subsequent actions – is that the undersigned had previously imposed restrictions upon plaintiffs who had brought a similar copyright infringement case, and Millennium therefore preferred to litigate before what it considered to be a more favorable forum.  In that prior case, the undersigned held that the applicable venue statute in copyright actions, 28 U.S.C. § 1400(a), effectively requires every defendant to be a resident of the state of the judicial district where the case is filed, and thus, there is no good cause to take expedited discovery related to possible infringers who are not likely to be residents of the state in which that judicial district is located because those possible infringers cannot be prosecuted in that lawsuit.  Nu Image, Inc., v. Does 1–23,322, 799 F. Supp. 2d 34 (D.D.C. 2011).   In the *Millennium TGA I* complaint, the Plaintiff did not allege that any one specific Doe defendant resided in the District of Columbia, let alone that all of the Doe defendants resided here.

On December 20, 2012, four days after dismissing the action it had filed in the District of Columbia, Millennium filed a complaint in the United States District Court for the Southern District of Texas, alleging copyright infringement of the same movie. *Millennium TGA, Inc. v. John Doe*, 4:11-cv-4501-VG (hereinafter "*Millennium TGA II*").

However, in *Millennium TGA II*, the complaint alleged copyright infringement against only one Doe defendant, whose internet protocol ("IP") address was allegedly traced to the state of Texas using geolocation technology.  The *Millennium TGA II* complaint also alleged a pendent civil conspiracy claim under state law, under the theory that the one named Doe defendant had engaged in a conspiracy with 938 unknown "co-conspirators" to unlawfully download Plaintiff's movie.  The 939 IP addresses identified in *Millennium TGA II*, the Internet Service Provider (ISP) associated with each IP address, as well as the alleged date and time of the downloading activity for each IP address, are exactly the same as in *Millennium TGA I.*

Shortly after filing *Millennium TGA II*, the Plaintiff sought leave to take expedited discovery, and the court in the Southern District of Texas granted Plaintiff's motion.  <u>See</u> Order Granting Plaintiff's Motion for Leave to Take Expedited Discovery, *Millennium TGA II*, Feb. 9, 2012 [Dkt. No. 6].  Plaintiff subsequently served a subpoena upon Comcast seeking the name, address, telephone number and email address for John Doe, who is allegedly linked to a Comcast subscriber, as well as for each Comcast subscriber who is linked to one of the 938 alleged "co-conspirators" associated with an IP address from the *Millennium TGA II* complaint.[1]  That subpoena issued from this court, the District of the District of Columbia.  Comcast objected to the subpoena, and Plaintiff filed the instant petition in this court, seeking to compel Comcast to comply with the subpoena.  <u>See</u> Motion to Compel Compliance with Subpoena, March 7, 2012 [Dkt. No. 1].  For ease of reference, the Court will refer to this third matter as *Millennium TGA III.*

---

1        Comcast is only one of several ISPs who allegedly provide Internet service to John Doe and the 938 alleged co-conspirators. Later filings indicate that 350 of the alleged co-conspirators are linked to Comcast subscribers.

When Plaintiff filed *Millennium TGA III* in this court, our local rules required Plaintiff to list all "related cases" on the civil cover sheet at the time of filing.  <u>See</u> Local Rule 40.5(b)(2).  Plaintiff listed only one related case, *Millennium TGA II* (the pending case in the Southern District of Texas) in the Notice of Related Case filed with the court.  Because Plaintiff did not list the prior case filed in this district as a related case, *Millennium TGA III* was randomly assigned, and it was given to Judge Huvelle.[2]  Judge Huvelle referred the Motion to Compel to Magistrate Judge Kay, and Judge Kay issued an order granting the motion in part and denying it in part.  Memorandum Order, *Millennium TGA III*, [Dkt No. 15].  Comcast appealed the ruling to Judge Huvelle.

Due to Plaintiff's earlier filed action in this court (*Millennium TGA I*), Comcast filed a motion to reassign the case to the undersigned, which Judge Huvelle granted after the appeal was filed.  Memorandum Opinion and Order, *Millennium TGA III*, [Dkt No. 20].  Judge Huvelle easily determined that *Millennium TGA I* and *Millennium TGA III* were related cases under our local rules[3],  describing Plaintiff's actions as akin to "judge shopping."  <u>Id</u>. at 3.  This Court could not agree more.

Accordingly, this matter is now before the undersigned for resolution of the appeal of the order of the Magistrate Judge.  Thus, let us turn to the merits.

---

2       Significantly, counsel failed to sign the Notice of Related Case, as required by the Notice and by the federal rules.  Dkt No. 2.  Given the omission, perhaps this was not a coincidental oversight.

3       <u>See</u> Local Rule 40.5(a)(4) (providing that "cases whether criminal or civil, including miscellaneous, shall be deemed related where a case is dismissed, with prejudice or without, and a second case is filed involving the same parties and relating to the same subject matter.").

**II.  General Standards Governing the Motion to Compel**

Deciding the instant motion to compel by Plaintiff is the functional equivalent of deciding a motion to quash by Comcast.   See Watts v. S.E.C., 482 F.3d 501, 508 (D.C. Cir. 2007) (describing challenge to agency's refusal to comply with the subpoena as the same as a Rule 45 motion to quash by the agency).   Rule 45 specifies that "the issuing court *must* quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies; . . . or subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv) (emphasis added).   The person objecting to production has a heavy burden to show that the subpoena should not be enforced. Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395, 403 (D.C. Cir. 1984).

The text of Rule 45 makes quite clear that parties and attorneys who issue subpoenas have an affirmative duty to prevent undue burden or expense to the persons subject to the subpoena:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(c)(1).

Accordingly, our circuit court has admonished district courts to be "generally sensitive to the costs imposed on third parties" when considering a motion to compel (or quash) pursuant to Rule 45, reminding us to consider "whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive.'"  Watts, 482 F.3d at 508 (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).  Thus, courts

have the discretion to limit discovery to prevent undue expense to third parties, even if the discovery sought is within the permissible scope of Rule 45 and Rule 26.  See Herbert v. Lando, 441 U.S. 153, 177, (1979) (noting that "the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they "be construed to secure the just, speedy, and inexpensive determination of every action" and that " the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party or person from . . . undue burden or expense . . . .'"") (quoting the 1970 Advisory Committee Notes to Fed. R. Civ. P. 26).

Just as it is improper under Rule 45 to subject non-parties to undue expense, it is also improper to subject non-parties to the undue inconvenience of litigating in a distant forum.  A classic example of such an "abuse of subpoena" is described by a case cited approvingly in the Advisory Committee Notes to Rule 45.  See Board of Ed. v. Farmingdale Classroom Teach. Ass'n, 343 N.E.2d 278 (N.Y. 1975) (cited in the 1991 Advisory Committee Notes to Fed. R. Civ. P. 45).  In Farmingdale, the court held that abuse of process occurs when a party manipulates the circumstances to serve process in an inconvenient forum for the persons who must respond, even if it is technically legal to proceed in that forum, because "such trickery and cunning [is] 'degrading to an honorable profession, and well calculated to bring the administration of justice into reproach and contempt. . . .'"  Id. at 282 (quoting Dishaw v. Wadleigh,  44 N.Y.S. 207, 209 (3d Dep't. 1897)).[4]  For these reasons, our circuit court has held that "nonparty witness territorial

---

4        Furthermore, a motion to quash may be justified where the subpoena is a transparent attempt to circumvent the law.  See, e.g., Laker Airways Ltd. v. Pan American World Airways, 607 F. Supp. 324, 326-27 (S.D.N.Y. 1985) (quashing subpoena served in New York, but seeking documents located in the United Kingdom, in a clear attempt to

convenience" is a valid factor to consider on a motion for a protective order in connection with a Rule 45 subpoena. In re Sealed Case, 141 F.3d 337, 343 (D.C. Cir. 1998).

### III. Application of Standards to Millennium's Subpoena

Millennium has served a subpoena upon Comcast to obtain the name, address, telephone number and email address for the Comcast subscriber whose IP address is associated with John Doe, the only defendant identified in the *Millennium TGA II* complaint. Millennium states that it needs this identifying information so that it can name that subscriber as a defendant in the lawsuit. In addition, Millennium seeks identifying information for each of the 350 Comcast subscribers who is among the 938 alleged "co-conspirators" associated with an IP address from the *Millennium TGA II* complaint. Millennium states that these individuals are potentially "joint tortfeasors" and that it needs to know their identities so that it can investigate the alleged conspiracy and potentially add those individuals as defendants in the *Millennium TGA II* complaint. Comcast objected to the subpoena, arguing, among other things, inconvenience of the forum, inadequate time for compliance, inadequate assurance of payment, improper joinder of the prospective Doe defendants, and lack of personal jurisdiction over the prospective Doe defendants. Millennium responded that Comcast was given adequate time and compensation for compliance, that Comcast had no standing to raise joinder or personal jurisdiction objections on behalf of the current and prospective Doe defendants, and that, furthermore, any such objections were premature. Magistrate Judge Kay agreed that the joinder and personal jurisdiction objections were premature and overruled all of Comcast's other objections, except with respect to inadequate time for compliance.

---

circumvent the requirements of the Hague Convention on Taking of Evidence Abroad in Civil or Commercial Matters).

As set forth above, the Plaintiff in this case had an affirmative duty to "take reasonable steps to avoid imposing undue burden or expense on [the] person[s] subject to the subpoena. . . ." Fed. R. Civ. P. 45(c)(1).   Accordingly, preventing undue burden resulting from "nonparty territorial inconvenience" is a factor that is required to be considered by the district court.   In re Sealed Case, 141 F.3d at 343.   Indeed, the burden and inconvenience not just to Comcast, but also to the third-party Comcast subscribers, is a relevant consideration, since those subscribers have a privacy interest in the information sought by Millennium.   The district court has an obligation to allow third parties to be heard when their privacy or other rights may be affected by enforcement of the subpoena. See, e.g., In re Subpoena Duces Tecum Issued to Commodity Futures Trading Com'n, 439 F.3d 740, 742-49 (D.C. Cir. 2006) (court considered privilege objections of WD Energy, whose documents were in possession of the government, even though the subpoena was served upon the government, not WD Energy, and even though the government interposed no objection with respect to the production of WD Energy's documents); Boeing Airplane Co. v. Coggeshall, 280 F.2d 654, 662 (D.C. Cir. 1960) (district court was required to conduct further proceedings as necessary to protect the rights of Boeing's competitors, even though they were not before the court, because proprietary information belonging to those competitors could potentially be disclosed in response to the subpoena).

Comcast pointed out in its opposition to the Motion to Compel that of the 351 Comcast subscribers whose personal identifying information is sought, only three reside in the District of Columbia.  [Dkt No. 7 at 2].  The Plaintiff has not directly responded to Comcast's arguments about the inconvenience of this forum for issuing a subpoena

affecting the rights of non-parties residing outside of the District of Columbia; instead, Plaintiff has simply made the vague assertion that it brings lawsuits where defendants "are likely to be located." [Dkt. No. 11 at 7-8]. There is no rhyme or reason as to why the rights of all the 351 subscribers should be heard and adjudicated in the District of Columbia. The complaint alleges that Plaintiff is organized under the laws of the State of Hawaii (with its principal place of business in Los Angeles) and that the only named Doe defendant resides in Texas. 348 of the 351 Comcast subscribers whose personal identifying information is sought – including the only defendant – reside somewhere other than the District of Columbia.  Thus, there is nothing in the record showing why this forum was appropriate to issue a subpoena for personal identifying information for all 351 Comcast subscribers. Engaging in "one stop shopping" in the District of Columbia for the  personal identifying information for all Comcast subscribers may be convenient, for whatever reason, to the Plaintiff. Nonetheless, this approach hardly demonstrates compliance with the Plaintiff's affirmative duty pursuant to Rule 45 to take "reasonable steps" to avoid undue burden and territorial inconvenience to the 348 (among the 351 total) subscribers residing outside of the District of Columbia. The court below, following Plaintiff's lead, also gave inadequate consideration to the issue of nonparty burden and territorial inconvenience, an error of law requiring reversal. See Fed. R. Civ. P. 72(a); Local Rule 72.2(c).

The anomalies in the present circumstances are many. The only defendant, John Doe, resides in Texas; yet he or she will have to file and litigate any objections in the District of Columbia. Experience has shown that many of the subscribers are laypersons without legal background, and that most will not have counsel and will therefore appear

*in propria persona*.  Given that, it is very important that these subscribers are not subject to litigating in an arbitrarily-selected forum that is hundreds, or even thousands, of miles away from their residences.  Forcing the Comcast subscribers to litigate their objections in a distant forum is completely unnecessary, since the Plaintiff can serve a subpoena upon Comcast in any judicial district where Comcast subscribers reside.

The situation is even more burdensome for the nonparty subscribers because of an error committed by the Plaintiff.  The order granting expedited discovery contained language, which was proposed and drafted by the Plaintiff, stating that "[s]ubscribers shall have thirty (30) days from the date of notice of the subpoena upon them to file any motions *in this Court* to contest the subpoena.  If the thirty-day period lapses without a contest, the ISP will have ten (10) day [sic] thereafter to produce the information in response to the subpoena to Plaintiff."  See Order Granting Plaintiff's Motion for Leave to Take Expedited Discovery at ¶ 5, *Millennium TGA II*, Feb. 9, 2012 [Dkt. No. 6] (emphasis added).  Thus, the discovery order from the Texas court purported to set terms and conditions for compliance with any future subpoena, and it even specified that objections were required to be filed in Texas, rather than with the court from which any subpoena issued.  The order has caused considerable confusion, as over a dozen ISP subscribers have followed the mandate of the Order and filed letters, objections, motions for protective orders and motions to quash in the Texas court.  See *Millennium TGA II*, Dkt Nos. 10, 12, 14, 15, 17, 20, 22, 27, 31, 32, 33, 35, 36, 38, 40, 41.[5]  In addition, many

---

5       One such objection attached a letter from Comcast to the ISP subscriber, in which Comcast advises the subscriber that if s/he intends to object, then s/he must file "something with both the Southern District of Texas and the District of Columbia. . . ." *Millennium TGA II*, Dkt No. 15.  This is an understandable directive from Comcast, given the language in the Texas order and the operation of Rule 45.

of the affected Comcast subscribers have filed objections in this Court.  Thus, the
Plaintiffs have created a situation where motions to quash are being filed in two
jurisdictions simultaneously, effectively doubling the burden on the nonparty
subscribers.[6]  This doubly burdensome situation is also improper, because it is well
settled that "only the issuing court has the power to act on its subpoenas."   In re Sealed
Case, 141 F.3d at 341  (analyzing the language and context of Rule 45, relevant caselaw
and the Advisory Committee Notes to Rule 45); accord In re Digital Equipment Corp.,
949 F.2d 228, 231 (8th Cir. 1991) (district court where underlying action was pending did
not have jurisdiction to rule on objections made to deposition subpoenas obtained from
district court in another district).  Despite the confusion and multiple objections filed by
Comcast subscribers in the Texas court, it appears that the Plaintiff has made no effort to
correct the erroneous language (that it proposed) in the Texas discovery order.  The Court
fails to see how Plaintiff's careless action (and inaction) are consistent with its affirmative
obligation to to take "reasonable steps" to avoid undue burden and territorial
inconvenience to the persons affected by the subpoena.

        Based on this record, this Court would be justified in denying the Motion to
Compel in its entirety based on the undue burden and territorial inconvenience to the
Comcast subscribers (at least until the erroneous Texas discovery order and the confusion
it has caused has been corrected).  However, the Court is mindful of the efforts expended
to date by Plaintiff, as well as Plaintiff's need and desire to prosecute any potentially
viable claims of copyright infringement and will therefore exercise its discretion to
enforce the subpoena in a modified form.

_____

6        Indeed, the Texas court has ruled upon (by denying) at least two such motions to
quash.  See Millennium TGA II, Dkt Nos. 16, 30.

The Court will deny the request for identifying information for the Comcast subscribers.  As to Doe, the only named defendant, he or she is linked to a Comcast subscriber who resides in Texas.  It is unduly burdensome to force that subscriber to travel over 1000 miles to the District of Columbia to protect his or her rights, particularly when the case is pending in Texas and Comcast can be served with a subpoena in Texas.

As to the 350 Comcast subscribers who are linked to alleged "co-conspirators" of Doe, the Court also denies the request for identifying information as unduly burdensome. The Fourth Circuit, joining other courts, has recently held that a state law civil conspiracy claim is preempted by the federal Copyright Act.  Tire Eng'g & Distrib'n, LLC v. Shandong Linglong Rubber Co.,  Nos. 10-2271, 10-2273, 10-2321, 2012 WL 2036971 *15 (4th Cir. June 6, 2012); accord Gary Friedrich Enters., LLC v. Marvel Enters., Inc., 713 F. Supp. 2d 215, 229 (S.D.N.Y. 2010); Tegg Corp. v. Beckstrom Elec. Co., 650 F. Supp. 2d 413, 423-428 (W.D. Pa. 2008); Higher Gear Group, Inc. v. Rockenbach Chevrolet Sales, Inc., 223 F. Supp. 2d 953, 960 (N.D. Ill. 2002); Hoey v. Dexel Sys. Corp., 716 F. Supp. 222, 224 (E.D. Va. 1989) ; Aqua Bay Concepts Inc. v. Grosse Point Board of Realtors, 24 U.S.P.Q.2d 1372, 1376 (E.D. Mich. 1992); see also Pacific Century International, Ltd. v. Does 1–37,  --- F.Supp.2d ----, 2012 WL 1072312 *4 (N.D. Ill. May 21, 2012) (ruling that plaintiffs in BitTorrent copyright infringement action had not, and could not, plausibly plead facts establishing an agreement, a required element of the civil conspiracy claim).  If the civil conspiracy claim is invalid, there is no good cause for discovery related to the alleged co-conspirators.  As our circuit court has explained, "[t]he federal courts are not free-standing investigative bodies whose coercive power may be brought to bear at will in demanding documents from others.  Rather, the discovery

devices in federal court stand available to *facilitate the resolution of actions cognizable in federal court*."  Houston Business Journal, Inc. v. Office of Comptroller of Currency, U.S. Dept. of Treasury, 86 F.3d 1208, 1213 (D.C. Cir. 1996) (emphasis added)[7]; see also Nu Image, 799 F. Supp. 2d at 36-37.

The burden to nonparty subscribers should not be ignored merely due to the fact that IP addresses associated with copyright infringement has allegedly been linked to their Internet accounts.  As one court recently observed, "although the complaints state that IP addresses are assigned to 'devices' and thus by discovering the individual associated with that IP address will reveal 'defendants' true identity,' this is unlikely to be the case.  Most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its

---

[7]        As to any potential Doe defendants linked to Comcast subscribers residing outside of Texas, it is also unlikely that Plaintiff can prosecute a copyright infringement claim against them in the *Millennium TGA II* lawsuit.  The Fifth Circuit has held that the copyright venue statute is a "special venue statute," and thus a copyright case "may be brought only in the district where the defendant 'resides or may be found.'"  Time, Inc. v. Manning, 366 F.2d 690, 696 (5th Cir. 1966) (quoting 28 U.S.C. § 1400(a)).  In addition, the Fifth Circuit has held that a Texas federal court does not have personal jurisdiction over a copyright infringement case solely because the alleged infringer had contacts with Texas, where "the merits of the copyright question" had no relationship with Texas.  Ham v. La Cienega Music Co., 4 F.3d 413, 416 (5th Cir.1993); see also  Healix Infusion Therapy, Inc. v. HHI Infusion Services, No. H-09-3440, 2010 WL 2277389, *4 (S.D. Tex. June 3, 2010) (personal jurisdiction was lacking in Texas where there was no showing that the defendant directed any specific acts towards Texas); Action Tapes v. Weaver, No. 3:05-CV-1693-H, 2005 WL 3199706, at *3 (N.D. Tex. Nov. 23, 2005) ("absent other factors, an individual is not made subject to personal jurisdiction in the Northern District of Texas for alleged copyright infringement by virtue of an eBay auction transaction conducted with a Dallas resident"); LCW Automotive Corp. v. Restivo Enterprises, No. SA-04-CA-0361-XR, 2004 WL 2203440, at *7 (W.D. Tex. Sept. 24, 2004) (no personal jurisdiction in copyright infringement action brought in Texas merely because plaintiff was a Texas corporation and defendant, a California corporation, allegedly copied photographs and text from plaintiff's website); Sefton v. Jew, 201 F. Supp. 2d 730, 742-44 (W.D. Tex. 2001) (no personal jurisdiction over California resident in copyright infringement case merely because Plaintiff resided in Texas and the alleged infringement inflicted financial harm upon a Texas resident).

subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper."  <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, Nos. 11-3995, 12-1147, 12-1150, 12-1154, 2012 WL 1570765 * 4-5 (E.D.N.Y. May 1, 2012) (and cases cited therein).  Plaintiff's counsel in the preceding case (who do not represent the Plaintiff in this action) conceded that a substantial percentage of the Internet subscribers linked to the IP addresses used in BitTorrent downloading are not actually liable for copyright infringement.  <u>Id</u>.

The burden to nonparty subscribers is also due serious consideration because of what is likely to transpire once Plaintiff's counsel obtains the identifying information of the subscribers.  A complaint recently filed in the Northern District of California describes and attaches actual correspondence that was allegedly sent by counsel representing the Plaintiff in the matter before this Court.  <u>See</u> Complaint [Dkt. No. 1], <u>Abrahams v. Hard Drive Productions, Inc.</u>, No. 3:12-1006 (N.D. Cal. filed Feb. 28, 2012).  The Court has reviewed the pleadings in that matter and takes judicial notice of their contents.  In the <u>Abrahams</u> matter, the present counsel sent the subscriber a settlement demand letter for $3400 and an unsigned memorandum containing a purported legal analysis of why asserting certain defenses to the copyright infringement action would be futile.[8]  <u>Id</u>. at Exhs. A & B.  The subscriber was also sent a "document hold" letter demanding that he not delete any Internet history, files or emails on his computer, that he not delete, install or update any software program on his computer, and even that

_____

8       The purported legal analysis is incomplete and slanted, to say the least – the memo essentially asserts that an Internet subscriber has a duty to know of any infringing activity that passes through her Internet router, and that anything less is "willful blindness" that subjects the subscriber to liability for contributory copyright infringement, a rather dubious proposition.

he not delete any voicemail messages or data on his cell phones or Personal Digital

Assistant devices.  Id. at Ex. D.  Plaintiff's counsel even warned of sanctions and civil

liability if spoliation were to occur.  Id.  The potential burden of such a data preservation

demand takes greater significance when the record in this case indicates that the lawyers

representing Plaintiff in this case commonly bring these BitTorrent copyright actions,

seek identifying information, keep the case pending for several months, and then never

prosecute the lawsuit against those subscribers who do not settle with them.[9]  [Dkt No. 7

at 15-16].  Given the intimidating tactics and oppressive demands made by Plaintiff's

counsel in other cases, it is particularly appropriate to require the Plaintiff to proceed

according to the federal rules and only allow discovery related to valid claims that can

and actually will be prosecuted in the federal court where the claims have been filed.

Nonetheless, the Court is sympathetic to Plaintiff's desire to learn the location of

potential infringers of its copyrighted material in an efficient fashion, and this Court

seeks to facilitate those efforts in a manner permissible under the federal rules.  Comcast

has done a preliminary analysis that establishes the location of each of the 351 IP

addresses of Comcast subscribers identified in the subpoena.  [Dkt No. 7 at 6].  Thus,

Comcast has the ability to, without undue burden, verify the preliminary analysis and

_____

9        Based on the reports of unduly burdensome actions and harassing
communications from some lawyers prosecuting these cases, courts have sometimes
imposed protective orders and regulated the communications with Internet subscribers
whose personal identifying information is sought in these BitTorrent copyright actions.
See, e.g. Digital Sin, Inc. v. Does 1-27, 2012 WL 2036035 (S.D.N.Y. June 6, 2012)
(refusing disclosure of email addresses and telephone numbers, and requiring specific and
detailed disclosures to subscribers advising them of their rights and how to object to
disclosure of their identifying information to the plaintiff); Malibu Media, LLC v. Does
1-5, 2012 WL 2001968 (S.D.N.Y. June 1, 2012) (refusing disclosure of telephone
numbers of subscribers due to potential for harassing phone calls from plaintiff's
counsel).

provide the city and state of residence for the subscriber associated with each of the 351 requested IP addresses.  This information can be turned over to the Plaintiff without providing notice to the subscribers, since providing the city and state, without more, is not providing personally identifying information as to any subscriber.  See 47 U.S.C. § 551(a)(2) ("personally identifiable information" pursuant to the Cable Act does not include information that "does not identify particular persons"); see also Scofield v. Telecable of Overland Park, Inc., 973 F.2d 874, 876 n2. (10th Cir. 1992) (construing statute).  The Plaintiff can then bring an action against the John Does linked to each of those 351 Comcast subscribers in each of the judicial districts where they reside, and Plaintiff can then serve a subpoena upon Comcast to obtain the identifying information for any subscriber in each of the judicial districts where the subscribers reside (which is also where any action against any Doe defendant linked to any particular subscriber would be pending).   Such a procedure complies with the admonition of our circuit court to consider "whether the discovery sought is 'obtainable from some other source that is more convenient, less burdensome, or less expensive.'"  Watts, 482 F.3d at 508 (quoting Fed. R. Civ. P. 26(b)(2)(C)(i)).

This relief is appropriate because the federal courts, and its subpoena power, are not to be used to gather information that is only relevant to invalid claims, for that is tantamount to a fishing expedition.  Nor is it appropriate to employ the subpoena power of the federal courts to unduly burden nonparties with the expense and obligation of protecting their rights in a forum that is arbitrarily chosen and decidedly inconvenient.

For the foregoing reasons, Millennium's Motion to Compel is denied.  It is hereby ordered that by no later than thirty (30) days from the issuance of this Opinion, Comcast

shall provide the city and state of residence for the subscriber associated with each of the

351 IP addresses requested in Millennium's subpoena.  It is further ordered that Comcast

preserve any data related to the 351 IP addresses for a period of at least 180 days from

date of this Opinion in case Plaintiff seeks to serve a subsequent subpoena.

An order accompanies this Memorandum.


**SO ORDERED.**
Date: June 25, 2012

_____
ROBERT L. WILKINS
United States District Judge